# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SEAN D. C. WATSON, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-17-73-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Sean D. C. Watson requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a

five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of hisr past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on February 8, 1984, and was thirty-one years old at the administrative hearing (Tr. 30, 180). He completed ninth grade, and has worked as a bricklayer, dishwasher, dining room attendant, torch cutter, janitor, ranch hand, plumber helper, fast food worker, roofer helper, poultry hanger, and landscape laborer (Tr. 23, 203). The claimant alleges he has been unable to work since June 19, 2014, due to a broken back (Tr. 202).

## Procedural History

On January 27, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Deirdre O. Dexter held an administrative hearing and determined the claimant was not disabled in a written decision dated December 18, 2015 (Tr. 10-25). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently, and stand/walk and sit up to six hours in an eight-hour workday, with the option to alternate sitting or standing after one hour of sitting or standing.

-3-

Additionally, the ALJ determined that the claimant could never climb ladders, ropes, or scaffolds, nor could he kneel, crawl, or be exposed to unprotected heights and moving mechanical parts, and he could only occasionally stoop and crouch. Finally, she limited the claimant to simple, routine, and repetitive tasks; found he could have occasional interactions with supervisors as required to obtain work instructions; found that he was able to work in proximity to co-workers but should never have more than occasional interaction with them; and found that the claimant should never interact with the general public (Tr. 16). The ALJ thus concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was other work he could perform, *e. g.*, housekeeper, agricultural produce sorter, and electrical accessory assembler (Tr. 23-25).

**Review**

The claimant's sole contention of error is that that the ALJ failed to properly account for the effects of his mental impairment of antisocial personality disorder. The Court finds this argument unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of chronic lumbar compression fracture, affective disorder, personality disorder, anxiety disorder, and substance addiction disorder (Tr. 13). Additionally, she determined that the claimant's allegations of pain in the knees, hands, and head were medically non-determinable (Tr. 13). The treatment records contained in this transcript reveal that the claimant received mental health treatment at Carl Albert Community Mental Health Center. He was assessed in January 2015 with a mood disorder not otherwise specified, an anxiety disorder not

otherwise specified, and polysubstance dependence, as well as having an obsessive compulsive personality (Tr. 398-399). Five months later, the claimant's mood, appetite, and sleep were stable, his concentration was good, and he was no longer having audiovisual hallucinations or suicidal/homicidal ideation (Tr. 405). However, after that time he was jailed and went off his medications so that, in September 2015 he was admitted for inpatient treatment for auditory hallucinations (Tr. 428). He was discharged three days later, when he was considered free of suicidal/homicidal ideation, and instructed to continue with outpatient treatment, including medications. His discharge diagnoses were schizoaffective disorder, impulse control disorder not otherwise specified, and antisocial personality disorder (Tr. 429).

On December 28, 2014, consultative examiner Kathleen Ward, Ph.D., conducted a mental status examination of the claimant (Tr. 392). Dr. Ward noted that the claimant arrived late having gone to the wrong place initially, his speech was "punctuated by bursts of incongruent laughter," and he appeared chemically impaired although he denied intoxication (Tr. 393). She also noted some deficits in social judgment and problem solving, and she concluded that he was an unreliable historian and likely incompetent to handle any funds awarded (Tr. 394). Furthermore, she stated that substance cessation/detox and relapse prevention were "clearly needed" (Tr. 394). She assessed the claimant with antisocial personality disorder, cannabis use disorder, amphetamine use disorder, alcohol use disorder, other/unknown substance use disorder, and schizoaffective disorder (Tr. 394).

On February 23, 2015, Gary Lindsay, Ph.D., reviewed the claimant's record and concluded he was moderately impaired in the three categories of restriction of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. 100). He then completed a mental RFC assessment in which he indicated that the claimant was markedly limited in the usual three categories of ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public, and that he was moderately limited in the ability to work in coordination with and proximity to others without being distracted by them, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes (Tr. 104-106).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence in the record. As to his mental impairments, he noted the claimant's lack of mental health treatment in 2014, as well as admitted drug use and positive drug screen in September 2014, and summarized Dr. Ward's consultative report (Tr. 18-19). He then summarized the claimant's treatment in 2015, noting the claimant's two mental health appointments with Carl Albert Community Mental Health Center, including "nearly immediate stability when he was compliant with treatment" (Tr. 19). Additionally, he acknowledged the claimant's inpatient treatment in September 2015, but that his deterioration had been related to going off his medications and that he had quickly stabilized upon going back on them. Additionally, the ALJ found that the claimant's deterioration while off medication supported a finding that he had significant mood and

psychotic symptoms that could interfere with his cognition and social functioning, but that they were generally not severe when he complied with his treatment (Tr. 18-19). He found that the evidence and clinical signs indicated the claimant could still perform unskilled work with close proximity to co-workers and supervisors, but that the claimant's anxiety with social panic and isolation (as well as problems when off his medication and his lack of significant relationships with others) called for only occasional interaction with co-workers and supervisors and no interaction with the general public (Tr. 20). He further limited the claimant from being around hazards, in light of his reported medication side effects (Tr. 20). He then assigned partial weight to Dr. Lindsay's reviewing opinion, noting that his opinion was consistent with the claimant's treatment history and stabilization with medication, but that the claimant had just begun treatment when Dr. Lindsay reviewed the record (Tr. 22). The ALJ also assigned some weight to Dr. Ward's opinion, finding it consistent with the claimant's poor judgment at times, as well as chemical intoxication upon exam, but that it did not include a function-by-function assessment (Tr. 22).

The claimant contends that the ALJ erred in her assessment as to the claimant's mental impairments, and that she was wrong in finding the claimant could work on a consistent and regular basis because the claimant's personality disorder explains his exercise of poor judgment, inconsistent work history, and consistent irresponsibility. Furthermore, the claimant argues that the ALJ did not consider that his failure to seek treatment was due to his mental impairments, and that the ALJ erroneously relied on daily activities because the claimant was homeless. Finally, the claimant asserts that the impulsive traits of his antisocial personality disorder prevent him from performing work.

In response, the Commissioner asserts that the claimant has not stated a factual basis for reversal and that the claimant's argument is that his diagnosis of antisocial personality disorder, alone, means that he cannot work, which is contrary to the evidence of record. Additionally, the Commissioner contends that the claimant's diagnosis as described in the DSM-V is insufficient to establish disability, and that the claimant has failed to point to any evidence in the record to support such a finding.

    The Court agrees that the claimant seems to assert that his diagnosis of antisocial personality disorder should, automatically, render him disabled. However, "[t]he mere diagnosis of a condition does not establish its severity or any resulting work limitations." *Paulsen v. Colvin*, 665 Fed. Appx. 660, 666 (10th Cir. 2016). *See also Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988) ("The mere fact that Bernal was diagnosed as suffering from major depression does not automatically mean that he is disabled."). The ALJ's RFC assessment includes functional limitations related to his mental impairments, and the claimant has not argued for additional functional limitations supported by the record. Rather, he cites to the Diagnostic and Statistical Manual of Mental Disorders (DSM-V) as to antisocial personality disorder to assert that people with this disorder often frequently change jobs, residences, and relationships, and are consistently and extremely irresponsible. He thus asserts that this disorder is the "probable cause of his unemployment, poverty, and homelessness." *See* Docket No. 13, pp. 8-9. He likewise contends that his inconsistent mental health treatment history demonstrates poor judgment, and that the ALJ improperly relied on his daily activities to find him not disabled. He thus concludes that the traits associated with his antisocial personality disorder, as defined in

the DSM-V, preclude him from performing substantial gainful activity. However, he has pointed to no evidence in his own medical record to support these general and conclusory assertions. The Court thus finds that the ALJ did not commit any error in his analysis. Rather, he noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, including those records related to any mental impairments the claimant had. The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). The ALJ's treatment of the medical evidence in this case meets these standards. The undersigned Magistrate Judge finds that the ALJ specifically noted the various findings of the claimant's treating, consultative, and reviewing physicians, *adopted* any limitations suggested in the medical record, *and still concluded* that he could perform light work.

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine his RFC differently from the Commissioner, which the Court simply cannot do. *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

**Conclusion**

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 24th day of September, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**